UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-21267-CIV-SEITZ/O'SULLIVAN

GBOLAGUNTE AYODELE,
    Plaintiff,

v.

PRIMERICA LIFE INSURANCE COMPANY,
    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the parties' cross-motions for summary judgment. [DE 17, 20]. Plaintiff is suing to recover on a life insurance policy that lapsed for non-payment of premiums over two years prior to the death of the insured. Accordingly, the life insurance policy upon which Plaintiff seeks to recover was not in effect at the time of the death of the insured, and Plaintiff cannot recover under the policy. Therefore, the Court will grant summary judgment in Defendant's favor and against Plaintiff, and deny Plaintiff's motion.

### I.   BACKGROUND[1]

On July 19, 2002, Primerica Life Insurance Company ("Primerica") issued a term life insurance policy insuring Plaintiff Gbolagunte Ayodele's ("Plaintiff") life and spousal rider ("Rider," collectively "Policy") insuring the life of Plaintiff's wife, Toyin Ayodele ("Decedent") for $100,000.00 each. [DE 17, Plaintiff's Motion for Summary Judgment, "Pl. Mtn." ¶¶ 1-2]. Plaintiff was the designated beneficiary of the Rider. [DE 1 ¶ 7]. The Policy lapsed for non-payment of premiums on January 19, 2006. Decedent passed away on June 4, 2008. [Pl. Mtn. ¶ 22]. Plaintiff attempted to collect on the Policy but was notified that the Policy had lapsed. On May 12, 2009, Plaintiff sued Primerica to recover the face value of the Policy.

#### A.   *The Term Life Insurance Policy And Rider*

The terms of the Policy provide that the Policy terminates if the Policy owner does not pay the premiums. [DE 20, Defendant's Motion for Summary Judgment, "Def. Mtn.," Ex. E]. Premium payments are due in advance of the period for coverage, but the Policy allows a grace period of thirty-one (31) days to make a late payment after

---

[1] The facts are undisputed or viewed as favorably to Plaintiff as reasonable.

the payment is due. [Policy at 5]. Simply put, the Policy terminates if a premium payment is more than thirty-one (31) days past due.[2] [*Id.*; Def. Mtn., Ex. E].

### B.   *Pre-Authorized Premium Payments Returned for Insufficient Funds*

Plaintiff authorized Primerica to submit monthly drafts to his business checking account to debit the premium payment due each month. [Pl. Mtn. Att. 1 ¶ 3]. The authorization form included the following provision: "If any debit is dishonored, for any reason, Primerica Life shall not have any liability whatsoever, even if the dishonor results in the forfeiture of insurance." [*Id.* at 6]. Primerica successfully debited monthly drafts from Plaintiff's bank account until December 14, 2005, when Primerica attempted to draft Plaintiff's account for the premium payment due on December 19, 2005. [Def. Mtn. ¶ 5; Pl. Mtn. ¶¶ 5-6]. The December 14, 2005 draft was returned for insufficient funds on December 22, 2005. [*Id.*]. Primerica's practice when a monthly premium draft is returned for insufficient funds is to submit a second draft. [Pl. Mtn. ¶ 11]. Accordingly, on December 27, 2005, Primerica resubmitted the draft to Plaintiff's bank account, which was returned for insufficient funds. [Def. Mtn. ¶ 6; Pl. Mtn. ¶¶ 8-9]. Primerica's practice when a second monthly premium draft is returned for insufficient funds is to change the account to direct billing, notify the policy owner of this change in billing method, and mail future bills to the policy owner. [Def. Mtn., Ex. 7 ¶ 9; Pl. Mtn. ¶ 11].

On January 17, 2006, Primerica submitted a third draft to Plaintiff's business checking account, which was paid on January 19, 2006. [Def. Mtn. ¶ 10]. Primerica avers that the draft submitted on January 17, 2006 was for the premium payment due on January 19, 2006, but that after the December 19, 2005 payment was not received, Primerica made an internal accounting adjustment to give the Policy a "paid to" date of January 19, 2006. [*Id.* ¶ 11]. Plaintiff has not made a premium payment since January 19, 2006. [*Id.* at 6].

### C.   *The Insurance Policy and Rider Lapse for Non-Payment of Premiums*

Plaintiff's Policy lapsed, effective January 19, 2006, for non-payment of premiums. [Pl. Mtn. at 1]. On February 21, 2006, Primerica notified Plaintiff by postal mail sent to his home address, that the Policy lapsed for

---

[2]For example, the payment that was due on December 19, 2005, provided coverage for the period December 19, 2005 through January 19, 2006. If that December 19, 2005 premium is not made prior to December 19, 2005, the premium still may be paid during the next thirty-one days, or until January 19, 2006, which would keep the Policy in effect through January 19, 2006.

-2-

non-payment of premiums, and offered to reinstate the Policy if Plaintiff made a premium payment by March 15, 2006. [Def. Mtn. ¶ 14; Ex. E].[3] Primerica avers that it also sent Plaintiff a returned item notification on January 5, 2006, a notice of change in billing method on February 6, 2006, and a notice of lapsed policy on May 20, 2006. [*Id.* ¶¶ 8, 12, 15]. Plaintiff claims that he never received any notification from Primerica concerning returned drafts or a lapse in the Policy. [Pl. Mtn. ¶¶ 19, 20]. However, he does not dispute the mailing address that Primerica used.

On June 4, 2008, over two years after the Policy lapsed for non-payment of the premiums, Decedent passed away. [*Id.* ¶22]. As the primary beneficiary of the Rider, Plaintiff attempted to collect the life insurance proceeds but was informed the Policy had lapsed. On May 12, 2009, Plaintiff sued Primerica for wrongful termination of the life insurance policy (Count I) and breach of contract (Count II) and seeks to recover $100,000.00 – the face value of the Policy. Plaintiff's claim for wrongful termination[4] alleges that Primerica (1) terminated the Policy for non-payment of premiums while simultaneously accepting and retaining a premium payment; (2) did not give proper notice of the lapse; and (3) terminated the Policy in violation of the terms of the Policy.[5] [DE 1 ¶¶ 14-16]. Plaintiff's claim for breach of contract alleges that Primerica refused to pay under the Policy. [*Id.* ¶¶ 21-22].

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991

---

[3] Primerica attached a copy of the notification sent on February 21, 2006 as an exhibit to its Motion, but because Primerica did not retain copies of the other notifications at the time the notifications were sent, Primerica attached "true and correct specimens containing the contents of the notifications actually sent." [*Id.* at 3 n.1].

[4] Plaintiff does not set forth the elements of a cause of action for "Wrongful Termination of Life Insurance Policy" or cite any authority to support that such a cause of action exists. Indeed, Primerica's Fourth Affirmative Defense is that "no such cause of action exists." Although sounding in tort (*i.e.*, "wrongful"), it is unclear whether this is a tort, contract, or statutory claim. Due to this pleading infirmity, the Court only can glean the bases for Plaintiff's purported cause of action for wrongful termination from allegations in the Complaint [DE 1], Plaintiff's Motion for Summary Judgment [DE 20], Plaintiff's Response to Defendant's Amended Motion for Final Summary Judgment [DE 21], and Plaintiff's Reply in Support of his Motion for Summary Judgment [DE 26].

[5] Plaintiff also alleges that Primerica refused to reinstate the Policy. [DE 1 ¶ 17]. However, because Plaintiff does not allege that he attempted to reinstate the Policy, the Court will not analyze this allegation.

(11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

Primerica argues it is entitled to summary judgment because (1) the Policy was not in effect at the time of Toyin Ayodele's death; (2) it was the responsibility of Plaintiff, not Primerica, to ensure that Plaintiff timely made all the required payments to keep the Policy in effect; and (3) no premium payments were made towards the Policy for over two years prior to Decedent's death. [*See* Def. Mtn. at 7]. Indeed, Plaintiff does not dispute that he failed to make any premium payment for the twenty-eight months prior to Decedent's death. [*See* Pl. Mtn. at 7]. Nor does Plaintiff dispute that the policy terminated effective January 19, 2006, over two years prior to Decedent's death. [*Id.* at 1; DE 21 ¶ 16]. Rather, Plaintiff argues that the Policy was not in effect only because Primerica wrongfully terminated the Policy and that Primerica should have ensured that Plaintiff made the premium payments required to keep the Policy in effect. Specifically, Plaintiff contends that Primerica is not entitled to summary judgment because it (1) wrongfully terminated the Policy for non-payment of the premium payment due on December 19, 2005 despite retaining the payment made on January 19, 2006; (2) caused the Policy to terminate

by not submitting additional bank drafts; and (3) did not send bills or notifications to Plaintiff. [DE 21; Pl. Mtn. at 1, 6-8].

### A.   *The Insurance Policy Lapsed For Non-payment Of Premiums*

Plaintiff argues that Primerica wrongly terminated the Policy for non-payment of premiums effective January 19, 2006, despite receiving payment on January 19, 2006, within the thirty-one (31) day grace period allowed for the payment due on December 19, 2005. [*See* DE 1 ¶¶ 12-18, DE 8 at 2, DE 20 at 1, DE 21 at 4-5]. Additionally, Plaintiff avers "it is paradoxical to claim" the Policy was "paid to" January 19, 2006 and terminated effective January 19, 2006. [Pl. Mtn. at 6]. Furthermore, Plaintiff argues that under Florida law, an insurer cannot retain a past-due premium and at the same time claim that a forfeiture has occurred. [DE 21 at 5].

Whether the December 19, 2005 payment was timely made is immaterial; what matters is that no subsequent premium was paid. Plaintiff's arguments to the contrary merely obfuscate the issue. Essentially, Plaintiff argues that he should have had coverage through February 19, 2006, not January 19, 2006, which ignores two critical facts. First, Plaintiff failed to make a premium payment for over two years prior to Decedent's death. Second, between December 19, 2005 and February 19, 2006, only one premium payment was made, but the Policy required two. Irrespective of whether the Policy should have terminated in January of 2006, the Policy would have properly terminated on any subsequent month that Plaintiff failed to pay the Policy premium.

Also, Plaintiff cites the Policy provision that: "During this 31 day [grace] period, the Policy will stay in force," to argue that the Policy should not have terminated on January 19, 2006. This argument is immaterial, as Plaintiff does not argue that the insurable event occurred during a period for which he paid for coverage. That is, even if the Policy should have stayed in force through February 19, 2006, the insurable event, Decedent's death, which occurred on June 4, 2008, was outside the coverage period. Thus, Plaintiff is not entitled to insurance coverage for an event that occurred on June 2008.

Indeed, not only are Plaintiff's factual assertions immaterial, but the cases Plaintiff cites[6] to support his

---

[6]*Peninsular Life Insurance Co. v. Howard*, 72 So.2d 389 (Fla. 1954); *Industrial Life & Health Insurance Co. v. Cofield*, 110 Fla. 315, 148 So. 549 (Fla. 1933); *Interstate Fire Insurance Co. v. Hamilton*, 356 So.2d 1348 (Fla. 1st DCA 1978); *Security Life & Trust Co. v. Jones*, 202 So.2d 906 (Fla. 2d DCA 1967); *Home Insurance Co. v. Mendelson*, 367 So.2d 1071 (Fla. 3d DCA 1979); *Travelers Indemnity Co. v. Mirlenbrink*, 345 So.2d 417 (Fla. 2d DCA 1977).

assertion that an insurer cannot retain a past-due payment and claim forfeiture are distinguishable. In those cases, an insurer that had cancelled a policy for non-payment of premiums, yet continued to accept premium payments, was estopped from claiming forfeiture or was deemed to have waived the conditions for reinstatement. However, in each case, the premium payment in dispute was for coverage during the period that the insurable event occurred. That is far from the case here, where Plaintiff contends only that he made a payment for a coverage period two years prior to the insurable event.

The grace period did not have the effect of providing Decedent with free coverage as Plaintiff insinuates. Premium payments are due in advance of the coverage period, and any payment made within the grace period only pays for the period that the payment would have covered had it been timely made. Here, the grace period was given its full effect, which was to provide thirty-one (31) days, after the payment due date, for Plaintiff to make the premium payment to keep the Policy in force. Accordingly, the payment due on December 19, 2005 was for coverage for the policy period December 19, 2005 through January 19, 2006. Thus, when the January 19, 2006 payment was credited to the premium payment due on December 19, 2005, it gave the Policy a "paid to" date of January 19, 2006.[7] [Def. Mtn. ¶ 11]. Therefore, Primerica did not retain any payment for which it denied policy coverage. Rather, the time period for which Plaintiff claims he was denied policy coverage is two years prior to the event for which he wants payment.

### B.   *Primerica Was Not Required To Notify Plaintiff That His Policy Expired*

Without citation to the Policy or law, Plaintiff avers that Primerica wrongfully terminated the Policy because it "did not provide Plaintiff with a notification of impending lapse or direct premium bills via U.S. Mail."[8] [DE 1 ¶ 15]. In particular, Plaintiff argues that Primerica cannot prove that it mailed bills or notices of the alleged

---

[7]Plaintiff also argues that it is "paradoxical" to claim that the Policy was "paid to" the date it was terminated. [Pl. Mtn. at 6]. However, because premium payments are due in advance of the coverage period, any payment made within the grace period only pays for the period that the payment would have covered had it been timely made.

[8]Plaintiff cites *Best Meridian Insur. Co. v. Tuaty*, 752 So.2d 733 (Fla. 3d DCA 2000), to argue that Primerica's routine practice is not convincing evidence of mailing a cancellation notice. The issue in *Best Meridian*, however, was whether the notice required by the policy had been provided. *Id.* at 734. Here, no such notice is required by the Policy. Furthermore, in *Best Meridian*, the insured did not merely rely upon allegations of non-receipt as Plaintiff does, but presented evidence of multiple instances in which the insurer did not follow its routine mailing practice. *Id.* at 736.

lapse with evidence so convincing that it would preclude Plaintiff from denying receipt of such mailings. [Pl. Mtn. at 1, 6-8]. However, neither the Policy nor state law[9] impose a duty to notify Plaintiff of a lapse in coverage. Regardless, even if there were such an obligation, Primerica satisfied the obligation when on February 21, 2006, it notified Plaintiff at his home address, that his Policy expired, and offered to reinstate the Policy. [Def. Mtn., Ex. D].

### C.  *It Was Plaintiff's Responsibility to Ensure Premium Payments Were Made*

Plaintiff contends that Primerica wrongfully terminated and/or breached[10] the terms of the Policy by failing to ensure that the premium payments required to keep the Policy in effect were timely made because Primerica did not submit additional drafts after the January 19, 2006 payment. [Pl. Mtn. at 7]. However, it was incumbent upon Plaintiff, not Primerica, to ensure that Plaintiff timely made all of his required premium payments. [Def. Mtn. at 1-2]. Nevertheless, Plaintiff argues that since he authorized Primerica to withdraw funds from his account, Primerica was obligated to continue to withdraw funds from his account. Plaintiff cites *Nat'l Found. Life Ins. Co. v. Wellington*, 526 So.2d 766, 767 (Fla. 3d DCA 1988), for the proposition that Primerica breached the agreement by failing to draft Plaintiff's account. In *Wellington*, however, the insurance contract required the insurer to withdraw premiums. Here, the authorization form upon which Plaintiff relies simply authorized Primerica to debit Plaintiff's account. In fact, the authorization form expressly states that Primerica has no liability if any draft is dishonored, even if the dishonor results in the forfeiture of insurance. [*Id.*, Ex. A at 6]. Since a draft was dishonored, and the dishonor resulted in the forfeiture of insurance, Primerica could not have wrongly terminated the Policy or breached any contract on those grounds.

Finally, Plaintiff argues that "*[b]ut for* Primerica terminating the policy on January 19, 2006, the Policy would have remained in full force and effect going forward and Mr. Ayodele would have made the requisite premium payments, as he had over the years, either through drafts on his bank account or by such other means amenable to Primerica." [DE 26 at 4 (emphasis in original)]. This argument, however, is belied by the facts. On

---

[9]Florida law does require a twenty-one day notice period before a life insurance policy covering someone over 64 years of age lapses. Fla. Stat. § 627.4555. Plaintiff is 49 years of age. [DE 17, Ex. A at 1].

[10]Plaintiff casts his argument in terms of wrongful acts, yet refers to the Policy as a basis for this duty.

February 21, 2006, Primerica notified Plaintiff by letter that his "premium payments are past due and [his] life insurance policy ha[d] lapsed." [Pl. Mtn., Ex. E]. Accordingly, Plaintiff was put on notice that his Policy had lapsed, yet took no steps to reinstate the Policy. Thus, even if Primerica had not terminated the policy on January 19, 2006, the Policy would not have remained in full force. Rather, the Policy would have lapsed because Plaintiff stopped making premium payments.

## IV. CONCLUSION

The Policy was not in effect at the time of Decedent's death because Plaintiff failed to make a premium payment on the Policy for over two years prior to the Decedent's death. In opposing Defendant's motion for summary judgment, Plaintiff simply argues that the Policy should not have lapsed on January 19, 2006, that Primerica should have notified Plaintiff of the lapse, and that Primerica should have ensured that Plaintiff paid his premiums. However, there is no dispute that the Policy lapsed for non-payment of premiums. Moreover, it was Plaintiff's responsibility to ensure that Plaintiff made his premium payments, and although not obligated to do so, Primerica notified Plaintiff of the lapse in the Policy and offered to reinstate the Policy. Thus, the Policy lapse was not "wrongful" or in breach of any contract, and since the Policy was not in effect at the time of Decedent's death, Primerica has no contractual obligation to pay out the life insurance proceeds. Therefore, Plaintiff is not entitled to recover under the policy and Primerica is entitled to judgment as a matter of law. Accordingly, it is

ORDERED that

(1) Defendant's Motion for Summary Judgment [DE 17] is GRANTED.

(2) Plaintiff Gbolagunte Ayodele's Motion for Summary Judgment [DE 20] is DENIED.

(3) All pending motions not otherwise ruled upon are DENIED AS MOOT.

(4) This CASE IS CLOSED.

DONE and ORDERED in Miami, Florida, this 22nd day of September, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge O'Sullivan
Counsel of Record